IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

MANITOWOC CRANES, LLC,

       Plaintiff,　　　　　　　　　　Case No: 1:15-cv-647

  -vs-

SANY AMERICA, INC. and　　　　　　　JURY TRIAL DEMANDED
SANY HEAVY INDUSTRY CO., LTD.,

       Defendants.

---

**COMPLAINT FOR TORTIOUS INTERFERENCE WITH A CONTRACT AND JURY DEMAND**

---

Plaintiff Manitowoc Cranes, LLC ("Manitowoc Cranes") alleges the following:

## I. PARTIES

1.    Manitowoc Cranes is a Wisconsin limited liability company with its headquarters at 2401 South 30th Street, Manitowoc, WI 54221-0070.

2.    Upon information and belief, Defendant Sany America, Inc. (Sany America) is a Delaware corporation with its headquarters at 318 Cooper Circle, Peachtree City, GA 30269.

3.    Upon information and belief, Defendant Sany Heavy Industry Co., Ltd. (Sany Heavy Industry) is a Chinese Corporation with its headquarters at Sany Industry Town, Economic and Technological Development Zone, Changsha, Hunan Province, China.

4.    Upon information and belief, Defendant Sany America has done and continues to do business in the State of Wisconsin, including the Eastern District, by, among other things, committing acts, either by itself or through intermediaries, that constitute misappropriation of the trade secrets of Manitowoc Cranes. The Sany SCC8500, which includes trade secrets

1

misappropriated from Manitowoc Cranes, was designed, in part, in this District. Upon information and belief, Mr. John Lanning, formerly of Manitowoc Cranes, worked out of his home in this District to design the SCC8500. Upon information and belief, Mr. Lanning had frequent communication with employees of Sany America and Sany Heavy Industry from this District while designing the SCC8500. Mr. Lanning resides at 2908 North County Road H, Reedsville, Wisconsin 54230.

5. Upon information and belief, Defendant Sany Heavy Industry has done and continues to do business in the State of Wisconsin, including the Eastern District, by, among other things, committing acts, either by itself or through intermediaries, that constitute misappropriation of the trade secrets of Manitowoc Cranes. The Sany SCC8500, which includes trade secrets misappropriated from Manitowoc Cranes, was designed, in part, in this District. Upon information and belief, Mr. John Lanning, formerly of Manitowoc Cranes, worked out of his home in this District to design the SCC8500. Upon information and belief, Mr. Lanning had frequent communication with employees of Sany America and Sany Heavy Industry from this District while designing the SCC8500.

## II. JURISDICTION AND VENUE

6. The jurisdiction of this Court is proper under 28 U.S.C. § 1332. This is a suit for tortious interference with contract under the common law, including without limitation under the common law of the State of Wisconsin.

7. Upon information and belief, Defendant Sany America offered for sale a crane with the model number, SCC8500. Mr. John Lanning misappropriated trade secrets of Manitowoc Cranes for use in designing the SCC8500. Upon information and belief, Defendant Sany America has misappropriated trade secrets in the Eastern District of Wisconsin. Upon information and belief,

Defendant Sany America has done business in the Eastern District either directly or through intermediaries. Upon information and belief, Defendant Sany America has committed the tort of misappropriation of trade secrets in the Eastern District. In addition, upon information and belief, a substantial part of the events or omissions giving rise to the claims of Manitowoc Cranes occurred in the Eastern District. Accordingly, Defendant Sany America resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c) and, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b)(1), and (b)(2).

8.      Defendant Sany America is subject to personal jurisdiction in Wisconsin and the Eastern District.

9.      Upon information and belief, Defendant Sany Heavy Industry manufactured and sold for import into the United States the SCC8500 crane. Upon information and belief, Mr. John Lanning misappropriated trade secrets of Manitowoc Cranes for use in designing the SCC8500. Upon information and belief, Defendant Sany Heavy Industry has misappropriated trade secrets in the Eastern District of Wisconsin. Upon information and belief, Defendant Sany Heavy Industry has done business in the Eastern District either directly or through intermediaries. Upon information and belief, Defendant Sany Heavy Industry has committed the tort of misappropriation of trade secrets in the Eastern District. In addition, upon information and belief, a substantial part of the events or omissions giving rise to the claims of Manitowoc Cranes occurred in the Eastern District. Accordingly, Defendant Sany Heavy Industry resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c) and, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b)(1) and (b)(2). In the alternative, Sany Heavy Industry is not resident in the United States and may be sued in this District under 28 U.S.C. § 1391(c)(3).

10. Defendant Sany Heavy Industry is subject to personal jurisdiction in Wisconsin and the Eastern District.

### III.  TORTIOUS INTERFERENCE WITH CONTRACT

11. John Lanning was previously employed by Manitowoc Cranes.

12. While at Manitowoc, Mr. Lanning was a party to a contract governing confidential information, intellectual property, and nonsolicitation of employees (the IP Contract). Mr. Lanning had previously entered into other similar agreements.

13. Mr. Lanning breached the IP Contract.

14. Mr. Lanning has been found by a Wisconsin court to have breached the IP Contract by engaging in solicitation of Manitowoc employees.

15. Mr. Lanning also breached the IP Contract by disclosing to Sany America and Sany Heavy Industry confidential information of Manitowoc Cranes.

16. Mr. Lanning also breached the IP Contract by using for the benefit of Sany America and Sany Heavy Industry confidential information of Manitowoc Cranes.

17. Other former Manitowoc employees who worked for Sany were parties to contracts governing confidential information, intellectual property, and nonsolicitation of employees (the IP Contracts). Former Manitowoc employees with an obligation not to use confidential information for the benefit of a third party or to disclose confidential information to a third party include Mr. Kyle Nape and Mr. Jeff Dreger.

18. John Lanning left the employment of Manitowoc Cranes and began working for Sany America in January, 2010.

19. Representatives of Sany America and Sany Heavy Industry attended a conference in Wisconsin in 2009 and first made contact with John Lanning during a plant tour in Manitowoc, Wisconsin. The representatives included Mr. Greg Trainer and Mr. Tyrone Dowery.

20. Shortly after the 2009 conference, Sany America began to solicit Mr. Lanning for employment.

21. Mr. Dowery contacted Mr. Lanning every few weeks to see if he would be interested in joining Sany.

22. Eventually, Mr. Lanning was interviewed in Georgia and made a visit to Sany Heavy Industry in China.

23. Even before starting work at Sany, Mr. Lanning wrote to Greg Trainer at Sany America stating that he had an idea for a new crane.

24. Sany America offered employment to Mr. Lanning and Mr. Lanning accepted that offer.

25. To induce Mr. Lanning to leave Manitowoc Cranes, Sany America initially doubled Mr. Lanning's salary that he was currently earning at Manitowoc Cranes.

26. When Mr. Lanning accepted the offer, he made clear that he would not sell his house in Wisconsin.

27. Mr. Lanning's house is in Reedsville, Wisconsin.

28. Immigration laws do not allow Mr. Lanning to work in China on a continuous basis.

29. Mr. Lanning obtains 60 or 90 day work visas for China. When those visas expire, he returns to Wisconsin.

30. When Mr. Lanning is in Wisconsin, he continues his work for both Sany America and Sany Heavy industry.

31. Mr. Lanning conducts conference calls from his home in Wisconsin.

32. Mr. Lanning exchanges email with employees of both Sany America and Sany Heavy Industry from his home in Wisconsin.

33. Shortly after Mr. Lanning went to work for Sany America, Mr. Eric Etchart, the President of Manitowoc Cranes at that time, wrote a letter to the President of Sany, Mr. Xiang Wengo, and the President of Sany America, Mr. Steven Zhou. The letter is dated March 18, 2010.

34. In his March 18, 2010 letter, Mr. Etchart informed Sany and Sany America that John Lanning possessed "Manitowoc information and intellectual property regarding products, product design, engineering, project plans, etc."

35. In his March 18, 2010 letter, Mr. Etchart put Sany and Sany America on notice of Mr. Lanning's IP Contract. Specifically, Mr. Etchart stated, "[T]hese individuals have signed agreements acknowledging Manitowoc's rights to that information and agreeing not to use it in any manner except for Manitowoc's exclusive benefit."

36. On March 30, 2010, Mr. Jianguo Tang, President of Sany America wrote back to Mr. Etchart and copied Mr. Wengo and Mr. Zhou.

37. Mr. Tang stated, "To the extent your letter intends to imply that SANY is targeting Manitowoc employees because of their knowledge of confidential information and intellectual property owned by Manitowoc, let me be clear: SANY has no interest in obtaining Manitowoc's confidential information, intellectual property or proprietary know-how."

38. Mr. Tang further stated, "Further, SANY fully respects both the law protecting trade secrets and confidentiality agreements that are signed by its employees in favor of former employers."

39. Mr. Tang further stated, "Of course, SANY plans on monitoring the performance of our employees with respect to these measures to ensure that they are in full compliance."

40. Contrary to Mr. Tang's letter, SANY did target Mr. Lanning due his knowledge of Manitowoc's confidential information and trade secrets.

41. Contrary to Mr. Tang's letter, Sany did have an interest in obtaining Manitowoc's confidential information, intellectual property, and proprietary know-how. While former Manitowoc employees provided confidential information and trade secrets to Sany, Sany actively encouraged misappropriation of Manitowoc's trade secrets and knew the trade secrets were acquired by improper means.

42. Contrary to Mr. Tang's letter, Sany did not monitor the performance of Mr. Lanning.

43. On July 17, 2013, the United States International Trade Commission instituted an investigation based on a complaint filed by Manitowoc Cranes. That complaint alleged that Sany America and Sany Heavy Industry violated (a) Section 337(a)(1)(A) of the Tariff Act of 1930, as amended, by reason of trade secret misappropriation and (b) Section 337(a)(1)(B) of the Tariff Act of 1930, as amended, by reason of patent infringement.

44. On May 6, 2015, the International Trade Commission issued the public version of its Commission Opinion.

45. The International Trade Commission found, "With respect to acquisition by improper means, the driving force behind Sany's hiring of Mr. Lanning was his knowledge of Manitowoc's trade secrets."

46. The International Trade Commission found, "The evidence, therefore, supports the ID's findings that Sany actively encouraged misappropriation of Manitowoc's trade secrets and knew the trade secrets were acquired by improper means."

47. By actively encouraging misappropriation of Manitowoc's trade secrets, Sany America and Sany Heavy Industry encouraged former Manitowoc employees, including at least Mr. Lanning, to violate their IP Contracts.

48. The International Trade Commission found, in apparent reference to Mr. Lanning's nondisclosure statement, "The nondisclosure agreement did not appear to have any effect. Sany did not take steps to stop any disclosure or use of such information by the new employees it recruited away from Manitowoc."

49. The International Trade Commission found, "Although Sany instructed Mr. Lanning not to use Manitowoc's information, it did nothing to prevent the use of Manitowoc's information when it was shared."

50. Manitowoc Cranes is an innovator of, among other technologies, crawler crane technology. It researched, developed, manufactured, and sold cranes in the United States that use novel methods of keeping cranes upright using variable position counterweight technology. It also researched, developed, and plans to sell cranes in the United States that are transformable into multiple configurations. These cranes use different variable position counterweight systems in the different configurations. For many years, Manitowoc Cranes has been a leader in U.S. industry researching, developing, designing, engineering, and commercially implementing crawler crane technology, including crawler cranes with variable position counterweight technology (the "Manitowoc Technology.").

51. Manitowoc Cranes owns trade secrets regarding manufacturing processes and parameters ("Manufacturing Technology") as well as in financial information regarding its business ("Financial Information").

52. Manitowoc Cranes owns trade secrets concerning the new and proprietary Manitowoc Technology that was and continues to be under development by Manitowoc Cranes. For example, Manitowoc has developed crawler crane technology that allows a crane to be set up in completely different configurations for different purposes. In these different configurations, different variable position counterweight systems are utilized for balancing the cranes. In addition to trade secrets in the variable position counterweight technology and the architecture of a crane that is transformable for different uses utilizing different counterweight technology, Manitowoc Cranes' trade secrets include information regarding the commercialization of this technology, including without limitation and in Manitowoc's market research and business decisions related to the Manitowoc Technology (the "Manitowoc Technology Related Information"). The type of crane embodied by the Manitowoc Technology represents an important advance in crawler crane technology. Manitowoc Cranes' trade secrets in the Manitowoc Technology, the Manitowoc Technology Related Information, the Manufacturing Technology, and "Financial Information" will collectively be referred to as "Manitowoc Trade Secrets." The Manitowoc Trade Secrets include technical information, designs, business information, competitive information, technologies, processes, procedures, strategies, customer names, pricing information, sales forecast data, and/or other information and know-how that was not generally known to Manitowoc Cranes' competitors or others in the crane industry.

53. Prior to misappropriation by Sany America and Sany Heavy Industry, the Manitowoc Trade Secrets constituted confidential information of Manitowoc Cranes.

54. Manitowoc Cranes has been careful to safeguard these trade secrets. It has maintained the secrecy of many of its inventions and developmental breakthroughs prior to patenting those inventions, giving Manitowoc Cranes an advantage over those competitors who do not know or use them. Manitowoc Cranes has controlled access to information about the Manitowoc Trade

Secrets, provides password protection to its IT systems, and caused its employees to use confidential markings on documents related to the trade secrets. Manitowoc Cranes has also entered into confidentiality agreements with its employees that require keeping the Manitowoc Trade Secrets confidential. Manitowoc Cranes takes reasonable steps to protect the secrecy of the Manitowoc Trade Secrets.

55. Manitowoc Cranes has spent considerable time, effort, and financial resources developing the Manitowoc Trade Secrets.

56. Certain of the Manitowoc Trade Secrets have been and/or are being misappropriated by the Defendants, which sell crawler cranes.

57. To accomplish the misappropriation of the Manitowoc Trade Secrets, Defendants recruited away from Manitowoc Cranes, Mr. Lanning, a high ranking engineer at Manitowoc Cranes, who was privy to Manitowoc Cranes' most sensitive proprietary technology, confidential business information regarding the crane market, and Manitowoc Cranes' confidential plans for future products. Mr. Lanning also served as a liaison between outside patent counsel and Manitowoc Cranes' engineer inventors, making him privy to Manitowoc Cranes' patent strategies. Mr. Lanning helped frame Manitowoc Cranes' patent strategies. Mr. Lanning works both in China and in Wisconsin for Defendants and with Defendants' engineers on a regular basis and was the lead designer for the Sany SCC8500 Crane--a crane that incorporates certain of the Manitowoc Trade Secrets. Mr. Lanning violated a contractual agreement regarding confidential information, intellectual property, and non-solicitation of employees by providing certain of the Manitowoc Trade Secrets to Defendants and using those Manitowoc Trade Secrets for the benefit of Defendants. This trade secret information was used to design and is incorporated into the SCC8500 Crane.

58. Defendants acquired by improper means and used the Manitowoc Trade Secrets.

59.     Defendants' misappropriation of the Manitowoc Trade Secrets and its confidential information is a coordinated effort involving Mr. Lanning, who learned of the Manitowoc Trade Secrets while employed at Manitowoc Cranes and then provided those trade secrets to Defendants so that Defendants could manufacture their own transformable crawler cranes with variable position counterweight technology without investing the resources that Manitowoc Cranes did to develop the necessary technology.

60.     Until January, 2010, Mr. Lanning was part of a team at Manitowoc Cranes working to develop a revolutionary, next-generation crane that was transformable into different configurations with different variable position counterweight systems in each configuration.

61.     Beginning in 1985, Mr. Lanning held various engineering positions for one or more affiliates of The Manitowoc Company (Manitowoc).  Mr. Lanning's engineering responsibilities concerned the design and manufacturing of a variety of cranes.

62.     Over his career at Manitowoc, Mr. Lanning held various engineering positions, including the Vice President of Engineering.  His last position before departing from Manitowoc Cranes in January, 2010 was Manager, Product Architecture Group.  The Product Architecture Group worked on the design of future crane products for Manitowoc Cranes.

63.     Mr. Lanning served as the lead design engineer for Manitowoc's model 31000 crane. In that role, he oversaw the entire project.

64.     The model 31000 crane has a variable position counterweight system that was developed by Manitowoc engineers.  The 31000 crane incorporates various inventions including some protected by the '928 and '158 Patents.  The counterweight system is unique.

65. Part of Mr. Lanning's responsibility at Manitowoc Cranes was to assist in business planning related to new product developments. Mr. Lanning was privy to Manitowoc Cranes' business planning, including the development of new products.

66. Because of Mr. Lanning's position at Manitowoc Cranes, he was privy to confidential and proprietary information regarding Manitowoc Cranes' crawler cranes, including its revolutionary variable position counterweight technology, as well as Manitowoc Cranes' strategic planning for the use of that technology. He was exposed to financial information, manufacturing processes, technical information, drawings, and designs that were not known to Manitowoc Cranes' competitors or others in the crawler crane industry. Specifically, the team on which Mr. Lanning served was working to develop a future generation crawler crane that was transformable into multiple configurations, each having a variable position counterweight system, and wherein the variable position counterweight system was different in the different configurations.

67. While working on this project, Mr. Lanning used Manitowoc Cranes' resources, including other employees, to assist in the development of a transformable crawler crane product. Mr. Lanning helped to create drawings of the design and was privy to the details of the project.

68. Mr. Lanning understood the commercial value of this technology and its revolutionary nature.

**69.** Section 1(b) of Lanning's IP Contract provides, "In addition to all duties of loyalty imposed on me by law, I will not: (i) directly or indirectly disclose any Confidential Information to anyone outside of Manitowoc or its employees (except to persons acting on Manitowoc's behalf with a legitimate need to know such information), nor (ii) use such Confidential Information for my own benefit or for the benefit of any other person or organization without the prior written consent of an authorized officer of Manitowoc. As to Confidential Information which is a trade secret, this

obligation of confidentiality will continue indefinitely or until such information: (i) has been made available generally to the public other than through my breach of this Agreement or (ii) is not considered a trade secret under state law. As to all other Confidential Information (which is not a trade secret under state law), this obligation of confidentiality will continue until the earlier of: (i) five years after my employment with Manitowoc has ended for any reason, or (ii) the Confidential Information has been made available generally to the public other than through my breach of this Agreement."

70. Mr. Lanning understood at the time that he signed the agreement that it imposed restrictions following the termination of his employment. He understood that, under the agreement, intellectual property created while employed by Manitowoc Cranes is the property of Manitowoc Cranes. Mr. Lanning understood that confidential information, included anything that was not generally available publicly, and he further understood that he was not to disclose confidential information to anyone outside of the company.

71. Mr. Lanning was reminded of his duties under the agreement at an exit interview with Mr. Larry Weyers. Mr. Weyers reminded Mr. Lanning of his obligations and informed Mr. Lanning that Manitowoc Cranes would take legal action if Mr. Lanning violated the agreement.

72. In the fall of 2009, Mr. Lanning discussed a potential position with SANY America. During those discussions, Mr. Lanning disclosed, without authority of Manitowoc Cranes, his ideas about the critical things that it takes to be successful with crawler cranes in the global market.

73. Shortly after resigning from Manitowoc Cranes, Mr. Lanning began working for Sany America and working with Sany Heavy Industry as a high ranking engineer. Mr. Lanning helped to conceive and plan the Sany SCC8500 crane and oversaw the design for that crane.

74. Notwithstanding the promises that Mr. Lanning made in his agreement, Mr. Lanning misappropriated from Manitowoc Cranes the design for a transformable crane being developed for Manitowoc Cranes, including the variable position counterweight concept. Mr. Lanning also misappropriated the knowledge that there was a market need for such a product and that the crane should fall within a specific capacity range. Mr. Lanning also appropriated various Manufacturing Technology and Financial Information. Upon information and belief, Mr. Lanning shared the Manitowoc Trade Secrets and other confidential information of Manitowoc Cranes with Defendants for use in Sany's SCC8500 crane.

75. Sany America and Sany Heavy Industry misappropriated trade secrets of Manitowoc Cranes.

76. Sany America and Sany Heavy Industry are responsible for the misappropriation of the trade secrets of Manitowoc Cranes.

77. Manitowoc Cranes never authorized or approved of the sharing of the Manitowoc Trade Secrets and confidential information with Defendants.

78. Defendants have unfairly competed and continue to unfairly compete with Manitowoc Crane by Defendants' manufacture and sale of cranes manufactured by or on behalf of Defendants using misappropriated trade secrets and confidential information of Manitowoc Cranes.

79. Unless prevented from doing so, Defendants are and will continue such misappropriation by manufacturing, selling, and/or importing crawler cranes that use misappropriated Manitowoc Trade Secrets and confidential information--for example, the SCC8500 crawler crane. Defendants are likely to capture a substantial portion of the market share that rightfully belongs to Manitowoc Cranes.

80. The Accused Products include crawler cranes with variable position counterweight systems, such as the Sany model SCC8500 crane. Defendants have advertised this crane as including a variable position counterweight system. That system incorporates variable position counterweight technology that contains certain Manitowoc Trade Secrets that were misappropriated by Defendants. Defendants were informed of various other confidential information and trade secrets of Manitowoc Cranes constituting Manitowoc Trade Secrets. Defendants used such confidential information and trade secrets.

81. The Accused Products were manufactured by or for Defendants without the authority or consent of Manitowoc Cranes, and use one or more of the Manitowoc Trade Secrets. Thus, without authority or consent, Defendants actually, threateningly, and inevitably incorporate and are incorporating one or more of the Manitowoc Trade Secrets, including the variable position counterweight technology and the transformable nature of the crane.

82. The Manitowoc Trade Secrets at all times prior to receipt by and/or use by Sany America and Sany Heavy Industry, were confidential and derive independent economic value from not being generally known in the industry, or to the general public, and not being readily ascertainable by proper means by persons outside Manitowoc Cranes.

83. In connection with his employment with Manitowoc Cranes, Mr. Lanning was aware of the Manitowoc Trade Secrets. The Manitowoc Trade Secrets constitute trade secrets within the meaning of Wis Stat. § 134.90(1)(c).

84. Upon information and belief, Mr. Lanning assisted Defendants in developing the SCC8500 crane by using and/or disclosing Manitowoc's Trade Secrets. Upon information and belief, Defendants were aware of and encouraged the misappropriation as evidenced by, at least, the

15

targeting of Mr. Lanning for hiring due to his knowledge of variable position counterweight technology used in crawler cranes.

85. Mr. Lanning breached a duty of confidentiality when he disclosed and/or used the Manitowoc Trade Secrets in connection with his work for Defendants. By providing the Manitowoc Trade Secrets to Defendants, Mr. Lanning engaged in theft of those Manitowoc Trade Secrets and breached his duty of confidentiality.

86. Mr. Lanning's actions were taken in the course and scope of his employment.

87. Defendants are responsible for the actions of Mr. Lanning.

88. Defendants acquired the Manitowoc Trade Secrets through their targeting for hiring, hiring, and interaction with Mr. Lanning. Defendants knew or had reason to know that its acquisition of the Manitowoc Trade Secrets was by improper means. Specifically, those trade secrets were obtained by theft and/or by a breach of duty of confidentiality.

89. Defendants misappropriated the Manitowoc Trade Secrets by disclosing and using those trade secrets without permission. Defendants used improper means to gain knowledge of those trade secrets. At the time of Defendants' disclosure and use, Defendants knew and/or had reason to know that their knowledge of the trade secrets was derived from Mr. Lanning, who had acquired the trade secrets by improper means. Further, at the time of Defendants' disclosure and use, Defendants knew or had reason to know that their knowledge of the trade secrets was derived from a person, Mr. Lanning, who owed a duty to Manitowoc Cranes to maintain the secrecy of the trade secrets and to not use them for the benefit of a competitor.

90. The actions of Defendants constitute a tortious interference with contract under the common law of Wisconsin.

91. The actions of Defendants constitute a tortious interference with contract under the common law of Georgia.

92. Defendants acted improperly and without privilege in encouraging the misappropriation of Manitowoc's trade secrets, in doing nothing to prevent the use of Manitowoc's confidential information that was shared, and in providing financial incentives to Mr. Lanning and other former Manitowoc employees to provide confidential information of Manitowoc to Defendants.

93. As discussed above, Defendants encourage the misappropriation. Thus, they acted purposely and with malice with intent to injure Manitowoc. While Defendants lacked an understanding of the relevant market, Defendants, at the urging of John Lanning, targeted the same market that Manitowoc intended to target based upon its market research.

94. As the International Trade Commission found, Sany "knew the trade secrets were acquired by improper means."

95. Defendants acted with malice, for example, in that they had knowledge of Manitowoc's rights in its trade secrets and confidential information and encouraged the misappropriation of that information. For example, Defendants were on notice that John Lanning possessed valuable confidential information of Manitowoc and had a contractual obligation not to disclose that information to Defendants or use that information for the benefit of Defendants.

96. Other employees of Sany were exposed to Manitowoc confidential information and took no steps to prevent the use of the confidential information when it was shared. Defendants' intent is established by this course of conduct.

17
Case 1:15-cv-00647-WCG   Filed 05/28/15   Page 17 of 20   Document 1

97. Defendants acted with intent to injure Manitowoc's existing product line as well. As found by the International Trade Commission, "Sany developed the accused products specifically to compete with the 400-ton Manitowoc 16000 Crane and the 600-ton Manitowoc 18000 crane."

98. Defendants' pricing strategy for the SCC8500 targeted the Manitowoc 16000 crane.

99. Defendants' actions encouraged Mr. Lanning and/or other former Manitowoc employees to breach their contracts with Manitowoc, including without limitation, their obligations of confidentiality. For example, as discussed above, Defendants encouraged the misappropriation of Trade Secrets.

100. Manitowoc Cranes suffered financial injury as a result of Defendants' misappropriation. For example, Manitowoc Cranes was forced to expend resources to protect its market by seeking an order of the International Trade Commission excluding the SCC8500 from entry into the United States.

101. The actions and/or omissions of Defendants have been intentional, willful and deliberate, entitling Manitowoc Cranes to an award of punitive damages. Defendants further acted or failed to act in intentional disregard of the rights of Manitowoc Cranes. Defendants also acted with intent to cause harm to Manitowoc.

## IV. PRAYER FOR RELIEF

102. Manitowoc Cranes, therefore, prays that the Court enter Judgment in its favor against all the Defendants granting the following relief:

(a) damages for Defendant's tortuous interference with a contract, including costs, prejudgment interest, and post-judgment interest;

(b) punitive damages, costs, and attorneys fees due to the intentional, willful and malicious acts or omissions of Defendants which were also an intentional disregard of the rights of Manitowoc Cranes; and

(c) such other and further relief as the Court deems just.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Manitowoc Cranes demands trial by jury of all issues so triable.

DATED: May 28, 2015                                    Respectfully submitted,

                /s/ Joel S. Aziere
Joel S. Aziere (WI Bar #1030823)
jaziere@buelowvetter.com
Suzanne M. Glisch (WI Bar #1079803)
sglisch@buelowvetter.com
BUELOW, VETTER BUIKEMA OLSON & VLIET, LLC
20855 Watertown Road, Suite 200
Waukesha, WI 53186
(262) 364-0300 Telephone
(262) 364-0320 Facsimile

OF COUNSEL:

David G. Wille
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
(214) 953-6595 Telephone
(214) 661-4595 Facsimile

Mark L. Whitaker
Thomas C. Martin
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Ave.,
NW Washington, D.C. 20004-2400
202-639-7700

L. Gene Spears
Tom Rooney
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4995
Telephone:  (713) 229-1234

Joseph Gray
Stephanie DeBrow
BAKER BOTTS L.L.P.
98 San Jacinto Boulevard
Suite 1500
Austin, TX  78701-4078
Telephone:  (512) 322-2500

ATTORNEYS FOR PLAINTIFF
MANITOWOC CRANES, LLC